IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CAMICO MUTUAL INSURANCE COMPANY,

        Plaintiff,

v.                                 CIVIL ACTION NO. 3:16-2357

HESS, STEWART & CAMPBELL, P.L.L.C.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

        Plaintiff CAMICO Mutual Insurance Company filed this declaratory action against Defendant Hess, Stewart & Campbell, PLLC., asking this Court to find it has no obligation to defend or indemnify Defendant for claims arising out of the activities of one of Defendant's employees beyond a single $100,000 sub-limit in the policy. In Defendant's Amended Answer and Counterclaim, Defendant opposes Plaintiff's request and asks this Court to declare that Plaintiff must pay Defendant "past and future general and special damages, aggravation, and inconvenience as well as attorney's fees, costs, and expenses, net economic loss occasioned by the delay, statutory damages, and pre-judgment and post-judgment interest[.]" *Am. Answer and Countercl.*, at 8, ECF No. 9. The parties have filed cross-motions for summary judgment. ECF Nos. 19 & 21. For the following reasons, the Court **DENIES, IN PART,** and **GRANTS, IN PART,** both motions.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

        The underlying facts of this case are not in dispute. Defendant provides professional bookkeeping, accounting, and tax-related services and operates as a Professional Limited Liability Company (PLLC) under West Virginia law. In late 2015, Defendant became aware of

discrepancies in the accounts of some of its clients. An internal investigation was performed, and it was discovered that one of Defendant's employees (referred to as Jane Doe) misappropriated assets from at least as early as October 2010 through September 2015.[1] Multiple clients have claims against Defendant, and Defendant gave timely notice of the claims to Plaintiff, its insurer. Plaintiff accepted notice of the claims, but issued Reservation of Rights Letters dated October 18, 2015, January 11, 2016, and March 11, 2016.

In the letter dated October 18, 2015, Plaintiff agreed to defend Defendant against the potential claims, subject to limitations set forth in the letter and a "reservation of the right to assert the $100,000 Sub-Limit of Liability applicable to *Claims* arising from misappropriation, misuse, theft, or embezzlement of funds." *Letter from Elizabeth M. Cauldwell of CAMICO to Eli Wilson of Hess, Stewart &Campbell, PLLC*, at 4, ECF No. 20-2 (Oct. 18, 2015) (italics original). In the letter dated January 11, 2016, Plaintiff renewed its reservation of rights, but agreed to provide Defendant a $100,000 sub-limit as an aggregate maximum amount for both indemnification and defense. *Letter from Mark Aubrey of CAMICO to James D. Lamp on behalf of Hess, Stewart & Campbell, PLLC* at 4, ECF No. 20-3 (Jan. 11, 2016). Similarly, in the March 11, 2016 letter, Plaintiff agreed to pay up to $100,000, but reserved its right to contest any request by Defendant for additional coverage for indemnification and/or defense under the policy. *Letter from Susan Snowden of behalf of CAMICO to James D. Lamp on behalf of Hess, Stewart & Campbell, PLLC* at 1, ECF No. 32-2 (Mar. 11, 2016). In their cross-motions, Plaintiff and Defendant sharply disagree as to the amount of coverage, if any, that is available under the policy.

---

[1] According to Plaintiff, Jane Doe has been charged with three hundred and two (302) counts of embezzlement, three hundred and twenty-six (326) counts of forgery, and three hundred and twenty-six (326) counts of uttering.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

As this Court sits by virtue of diversity jurisdiction, state substantive law controls the Court's analysis of the insurance policy. *Nationwide Prop. & Cas. v. Comer*, 559 F. Supp.2d 685, 690 (Mar. 27, 2008) (citation omitted). Under West Virginia law, "insurance policies are controlled by the rules of construction that are applicable to contracts generally." *Payne v. Weston*,

466 S.E.2d 161, 166 (W. Va. 1995). Thus, insurance policies should be given their "plain, ordinary meaning." *Aluise v. Nationwide Mut. Fire Ins. Co.*, 625 S.E.2d 260, 268 (W. Va. 2005) (internal quotation marks and citations omitted). If the provisions "'are clear and unambiguous[,] they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.'" *Id.* (quoting, Syl., *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (1970); other citation omitted). However, where ambiguous terms exist, those terms "are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E2d 488 (W. Va. 1987).[2] If ambiguous language exists in an exclusionary provision, the language "will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. Pt. 5, *id*. An ambiguity exists "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" Syl. Pt. 1, *Prete v. Merch. Prop. Ins. Co*., 223 S.E.2d 441 (W. Va. 1976). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 186 (W. Va. 2013) (quoting Syl. pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 162 S.E.2d 189 (W. Va. 1968)).

In their brief, Plaintiff first argues that all claims arising from the criminal activities of Jane Doe are outside the scope of the insurance policy it issued to Defendant because Defendant

---

[2]Overruled on other grounds by *Parsons v. Halliburton Energy Serv., Inc.*, 785 S.E.2d 844 (W. Va. 2016).

has failed to fulfill a condition precedent to coverage. Specifically, Plaintiff points to Section 1.A.1

of the Insuring Agreement of the Policy that provides it will pay

> those sums that an *Insured* becomes legally obligated to pay as
> *Damages* because of a *Claim* arising out of an *Insured's* negligent
> act, error or omission in rendering or failing to render *Professional*
> *Services* performed after the *Retroactive Date* and before the end of
> the *Policy Period*, provided that:
>
>     *    *    *
>
> (b) the *Claim* does not arise from circumstances
> which, prior to the effective date of the *Policy*
> *Period*, any *Insured* might reasonably expect would
> be the basis for a *Claim*[.]

*Accountants Prof'l Liab. Ins. Policy*, at 1 (I.A.1(b)), ECF No. 20-4, at 7 (italics original). The

policy further defines "an insured," in part, as "[a] current or former . . . employee of a *Named*

*Insured*." *Id*. at 3-4 (II.(b)) (italics original). In light of these provisions, Plaintiff argues that Jane

Doe was an insured under the policy who was aware prior to the effective date of the policy period

that her activities might reasonably serve as the basis of a claim. Therefore, Plaintiff argues

coverage does not exist for any claims arising or resulting from Jane Doe's actions.

    In support of its argument, Plaintiff cites the Fourth Circuit in *Bryan Brothers Inc.*

*v. Continental Casualty Co.*, 660 F.3d 827 (4th Cir. 2011). In *Bryan Brothers*, the Fourth Circuit

considered a substantially similar insurance provision under Virginia law. As here, Bryan Brothers

was an accounting firm that sought coverage under a professional liability policy for liability that

arose from the illegal activities of a former employee. 660 F.3d at 828. The employee stole funds

from client accounts prior to, and during, the policy period. *Id*. at 829. The insurer, Continental

Casualty Insurance Company, asserted the policy contained a condition precedent to coverage that

it would pay proceeds "'provided that: . . . prior to the effective date of this policy, none of you

-5-

had a basis to believe that any such act or omission, or interrelated act or omission, might reasonably be expected to be the basis of a claim . . . .'" *Id*. at 828 (quoting "prior knowledge provision" in the policy). The insurer denied coverage under this provision by claiming the employee "had reason to believe, before the effective date of the policy, that her thefts might become the basis for claims." *Id*. at 829.

In considering the issues presented in the case, the Fourth Circuit looked to Virginia law which has long held that "if the insured fails to fulfill a condition of an insurance policy, the insurer's coverage obligation is not triggered." *Id*. at 830 (citations omitted). However, if a claim falls "within the scope of the insuring clause, but falls under a specific exclusion[,] . . . the policy is not avoided and another policy provision, such as a savings clause, may preserve coverage." *Id*. (citation omitted). Although Bryan Brothers argued it was entitled to coverage by virtue of the "innocent insureds provision," the Fourth Circuit disagreed and found "[t]he plain language and structure of the policy convince us that the prior knowledge provision is a condition precedent to coverage." *Id*.

In doing so, the Fourth Circuit noted that the language at issue was in the first coverage agreement clause and expressly stated coverage was available "'*provided that*'" there was no prior knowledge of an "act or omission, or interrelated act or omission, [that] might reasonably be expected to be the basis of a claim." *Id.* at 830-31 (quoting policy; italics added in *Bryan Bros.*). Given this clear and unambiguous language, the Fourth Circuit held a lack of prior knowledge was a condition to coverage and, because an employee had such "prior knowledge, '[t]here has been a failure to fulfill a condition upon which [Continental Casualty Company's]

obligation is dependent.'" *Id.* at 831 (quoting *State Farm Mut. Auto. Ins. Co. v. Arghyris*, 55 S.E.2d 16, 21 (Va. 1949)). In other words, if prior knowledge exists, coverage is unavailable under the terms of the policy. As the Fourth Circuit explained, it is a fundamental principle of insurance that insurers do not typically agree "to cover preexisting risks and liabilities known by the insured. Thus, it is generally the insured's duty to provide truthful and complete information so the insurer can fairly evaluate the risk it is contracting to cover." *Id.* (citations omitted).

As coverage was denied because Bryan Brothers did not fulfill the condition precedent, and there was no evidence the claim was denied under a bad acts exclusion in the policy, the Fourth Circuit further determined that "innocent insureds provision, which appear[ed] to be an exception to the bad acts exclusion, was not implicated." *Id.* Even if it was considered as an exception to the prior knowledge provision, the Fourth Circuit stated "exclusions and exceptions in an insurance policy cannot expand the scope of agreed coverage." *Id.* (citations omitted). Thus, if there is no coverage by virtue of the plain language of the prior knowledge provision, the fact Bryan Brothers may be "innocent," cannot create coverage.

Comparing *Bryan Brothers* to the facts of this case, the Court first finds that the language quoted above is very similar to the language in *Bryan Brothers* and also appears in the first coverage agreement clause. As in *Bryan Brothers*, the insurer agrees to pay certain claims "provided that: . . . the *Claim* does not arise from circumstances which, prior to the effective date of the *Policy Period*, any *Insured* might reasonably expect would be the basis for a *Claim*[.]" *Accountants Prof'l Liab. Ins. Policy*, at 1 (I.A.1(b)), ECF No. 20-4, at 7 (italics original). Upon review, the Court finds this language clear and unambiguous and, as in *Bryan Brothers*, a lack of

prior knowledge is clearly a condition precedent to coverage. However, the fact this language establishes a condition precedent does not end the Court's inquiry because the parties have raised additional issues and policy provisions that must addressed.

First, Defendant argues that Plaintiff should be estopped from asserting that no coverage exists because Plaintiff agreed in its letter dated January 11, 2016, to provide Defendant with the $100,000 sub-limit under the policy, and Plaintiff never asserted Defendant failed to meet a condition precedent in its Reservation of Rights letters. In addition, in the letter dated March 11, 2016, Plaintiff said it would provide reimbursement under the sub-limit "up to the uncontested amount of $100,000.00" *Letter from Susan R. Snowden to James D. Lamp*, at 1. Defendant asserts it directly and reasonably relied upon their agreement and this "uncontested amount" in resolving four underlying claims by clients. Thus, Defendant argues Plaintiff should now be estopped from changing its position.

Estoppel applies when "a party is induced to act or refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation[.]" Syl. Pt. 1, in part, *Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135 (W. Va. 1998) (internal quotation marks and citation omitted). In its Response, Plaintiff asserts that Defendant cannot demonstrate any detrimental reliance in this case because Plaintiff is not seeking reimbursement of any of the funds it tendered to Defendant. Therefore, Defendant's reliance upon the funds is not at jeopardy, and there are no grounds for estoppel. Given Plaintiff's position that it is not seeking reimbursement, the Court agrees with Plaintiff that Defendant cannot show it relied upon those funds to its detriment in settling the underlying cases.

In addition, the Court finds no merit to Defendant's argument that Plaintiff should be estopped from arguing there is no coverage under the policy by virtue of the condition precedent because Plaintiff already agreed to pay Defendant the $100,000 sub-limit. In the letter dated January 11, 2016, Plaintiff clearly and unequivocally stated that its decision to make the $100,000 sub-limit available to Defendant "does not constitute a waiver of any policy or coverage defenses otherwise available to [Plaintiff]." *Letter from Mark Aubrey to James D. Lamp*, at 4. Additionally, the letter provides that Plaintiff "retains and reserves the right to . . . seek a judicial declaration as to its rights and obligations under the policy[.]" *Id.* at 5. Similarly, in the March 11, 2016 letter, Plaintiff agreed to provide Defendant reimbursement under the sub-limit "up to the uncontested amount of $100,000.00" but "reserve[d] its right to contest that any additional indemnity and/or defense are available under the policy of insurance and preserves all policy provisions and defenses." *Letter from Susan R. Snowden to James D. Lamp*, at 1. Plaintiff further stated that the payment "shall not be deemed a waiver of any such rights." *Id.*[3] Given Plaintiff's unequivocal reservation of its right to raise "all policy provisions and defenses," the Court finds estoppel improper.

Nevertheless, despite the condition precedent language, the parties agreed to a modification to provide limited coverage for "Known Claims." Pursuant to a separate endorsement, the parties agreed that the following language would be added as paragraph 4 to Section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements of the Policy:

---

[3]In fact, Plaintiff attached to its letter a copy of the declaratory judgment action it filed with this Court on that same day.

-9-

4.      Notwithstanding section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, paragraph 1.(b):

(a) if any *Insured* became aware of a *Claim* or a *Potential Claim* either after the *Retroactive Date* [February 28, 1987] of this Policy or during the twelve (12) months prior to the Effective Date [February 28, 2015] of this *Policy Period*, whichever is later, and reports that *Claim* or *Potential Claim* to the Company during the *Policy Period*, that *Claim* or *Potential Claim* shall be deemed timely reported to the Company during the *Policy Period*; and

(b) the Limits of Liability applicable to such *Claim* or *Potential Claim* shall be limited to the amount stated in section I. INSURING AGREEMENTS, C. Limits of Liability, Sub-Limits and Deductibles, paragraph 1.c.

The Sub-Limit of Liability provided by this endorsement for a *Claim* or *Potential Claim* reported pursuant to this paragraph I.A.4 shall apply even if: . . . (ii) any *Insured* has failed to disclose knowledge of a *Claim* or *Potential Claim* on the renewal application or supplemental application submitted to the Company for the *Policy Period* during which such *Claim* or *Potential Claim* is reported. Section VI. POLICY CONDITIONS, B. Innocent *Insured* does not apply to any *Claim* or *Potential Claim* reported pursuant to this paragraph I.A.4.

*Ltd. Coverage for "Known Claims" Endorsement*, at 1, ECF No. 1-1. The endorsement also

provides that the following paragraph, referenced as paragraph 1.c in subparagraph 4(b), be added

to section I. INSURING AGREEMENTS, C. Limits of Liability, Sub-Limits and Deductibles, 1.

Limit of Liability—Per *Claim* and Sub-Limit:

(c)      The maximum amount payable by the Company for *Damages* and *Claims Expenses* for each covered *Claim* reported during this *Policy Period* pursuant to section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, paragraph 4., shall be either $100,000 or 25% of the Per *Claim* Limit of Liability stated on the Declarations, whichever is less. Amounts paid on behalf of an *Insured* pursuant to this

-10-

paragraph are chargeable against the applicable Deductible and the
Limits of Liability.

*Id*. Upon review of this endorsement, it appears clear to the Court that, despite the fact Defendant did not fulfill the condition precedent under the basic policy, the parties otherwise agreed Defendant would be afforded limited coverage in a situation exactly like occurred here. That is, where Jane Doe engaged in activities after the Retroactive Date of the policy and she knew these activities gave rise to a potential claim and the information was reported to Plaintiff during the policy period, there is coverage up to the sub-limit in paragraph 1.c, which in this case is $100,000. Given that the plain and conspicuous language of the endorsement clearly sets forth this sub-limit, the Court further finds it implausible for Defendant, an experienced business entity, realistically to believe it had purchased at least $1,000,000 worth of coverage for its "known claims."

As stated above, Plaintiff paid Defendant $100,000. In doing so, however, none of the letters discussed above reference the "Known Claims" endorsement. Instead, the October and January letters reference, inter alia, other paragraphs, including I. INSURING AGREEMENTS C. Limits of Liability, Sub-Limits and Deductibles 1.b, which also contain sub-limits of $100,000 for the misappropriation, misuse, theft, or embezzlement of funds. Notwithstanding the fact that Plaintiff cited the wrong paragraphs in paying the $100,000, the funds nevertheless were paid and are consistent with the sub-limit contained within paragraph 1.c., which unmistakably applies under the clear language of the "Known Claims" endorsement.

Despite the sub-limit caps, Defendant asserts it is entitled to full coverage under an "Innocent Insured" provision in the policy contained in Section VI. POLICY CONDITIONS, B. This provision provides, in part:

### B. Innocent *Insured*

\*          \*          \*

2.      If any coverage for a *Claim* would be void, excluded, suspended or lost by as a result of any *Insured's* failure to comply with the reporting requirements of section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, and Section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, then this policy's coverage will continue to apply to any innocent *Insured* who did not fail to comply with the reporting requirements of this policy, provided that:

> (a) the innocent *Insured* promptly gives notice to the Company in accordance with the provision of section I. INSURING AGREEMENTS, A. Coverage for *Damages* and Reporting Requirements, and section VI. POLICY CONDITIONS, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, and

> (b) the *Named Insured* is continuously insured by the Company through the date upon which notice is received by the Company.

*Accountants Prof'l Liab. Ins. Policy*, at 9 (Policy Conditions) (VI.B.2) (italics original). Defendant argues that this provision indicates an intent to provide coverage for innocent insureds, such as itself, which is broader than a simple exception to a bad acts exclusion. However, the "Known Claims" endorsement unambiguously provides that that the "Section VI. POLICY CONDITIONS, B. Innocent *Insured* does not apply to any *Claim* or *Potential Claim* reported pursuant to this paragraph I.A.4." *Ltd. Coverage for 'Known Claims' Endorsement*, at 1. Thus, the Court finds no merit to Defendant's argument it is entitled to full coverage under the "Innocent Insured" provision because it simply does not apply.

-12-

Defendant next argues that an ambiguity exists in the policy as highlighted by a separate page. This page entitled "**NOTICE**" is in bold print and appears between the cover page and the Policy Table of Contents. In part, it provides "**[t]his policy does not cover prior acts unless specifically included. The Company will not indemnify or defend *Claims* arising from acts, errors or omissions which occurred prior to the policy's *Retroactive Date*.**" *Accountants Prof'l Liab. Ins. Policy*, Notice, at i, ECF No. 20-4, at 3 (italics and bold original). The Court fails to see how these statements create an ambiguity in the policy language at issue in this case. In fact, the "**NOTICE**" concludes by stating: "**This policy contains additional restrictions on coverage. Please review this policy carefully, including the Declarations and all endorsements.**" *Id*. Upon review, there is simply nothing in this language that could cast doubt on the clarity of the provisions previously discussed.

Finally, Defendant argues that the policy language limiting the amount of coverage to less than the mandatory minimum coverage required by West Virginia law is inoperable because it violates public policy. Defendant points to the fact that in 1996 the West Virginia Legislature enacted legislation to allow certain professions [4] to create a "Professional Limited Liability Company" (PLLC) to offer professional services to the general public. W. Va. Code § 31B-13-1305 (1996). In doing so, the Legislature gave the members of PLLCs certain immunity from personal liability,[5] but with the caveat that the PLLC

---

[4] "Professional Service" includes those services rendered by attorneys, physicians, podiatrists, dentists, optometrists, accountants, veterinarians, architects, engineers, osteopathic physicians and surgeons, chiropractors, psychologists, social workers, acupuncturists, and land surveyors. W. Va. Code § 31B-13-1301(3) (2007).

[5] West Virginia Code § 31B-13-1305(b) provides:

> shall carry at all times at least one million dollars of professional
> liability insurance which shall insure the limited liability company
> and its members against liability imposed upon the company or any
> of its members arising out of the performance of professional
> services to patients or clients of the company by any of the members
> or professional or nonprofessional managers or employees of the
> limited liability company.

W. Va. Code § 31B-13-1305(e).[6] Defendant states that this provision is designed to protect the

public with a guaranteed source of compensation for damages, while shielding members of the

PLLC from personal liability. Defendant argues Plaintiff's limitation of coverage is repugnant to

the mandatory minimum coverage required by the statute and, therefore, should be struck, as the

West Virginia Supreme Court has done with respect to policies that fail to meet the mandatory

minimum amounts of coverage for automobile insurance policies. *See, e.g., Dotts v. Taressa*, 390

S.E.2d 568, 574 (W. Va. 1990) (holding that "an intentional tort exclusion in a motor vehicle

---

> A member, manager, agent or employee of a professional limited
> liability company shall not, by reason of being a member, manager,
> agent or employee of a professional limited liability company, be
> personally liable for any debts or claims against, or the acts or
> omissions of the professional limited liability company or of another
> member, manager, agent or employee of the professional limited
> liability company.

W. Va. Code § 31B-13-1305(b). However, liability may attach for a "negligent or wrongful act or omission in which the individual personally participated to the same extent as if the individual rendered the professional service as a sole practitioner." W. Va. Code § 31B-13-1305(d).

[6]West Virginia Code § 31B-13-1305(c) provides that the PLLC

> shall be liable for the acts or omissions of its members, managers,
> agents and employees to the same extent to which any other limited
> liability company would be liable for the acts or omissions of its
> members, managers, agents and employees while they are engaged
> in carrying on the professional limited liability company business.

W. Va. Code § 31B-13-1305(c).

-14-

liability insurance policy is precluded under our Safety Responsibility Law up to the minimum insurance coverage required therein. The policy exclusion will operate as to any amount above the statutory minimum.").

In response, Plaintiff argues the authority of a court to refuse to enforce a contract on public policy grounds is limited to those situations in which the contract violates "some explicit public policy" that is "well defined and dominant, and [which] is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *St. Paul Mercury Ins. Co. v. Duke Univ.*, 849 F.2d 133, 135 (4th Cir. 1988) (internal quotation marks and citations omitted). "'The usual and most important function of the courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the general welfare.'" *Id.* (quoting *Smithy v. Braedon*, 825 F.2d 787, 791 (1987). Plaintiff asserts that the policy here does not violate any explicit or well-defined public policy.

Upon review, the Court agrees with Plaintiff. Here, Defendant purchased an Accountants Professional Liability Insurance Policy with a $2,000,000 liability limit, well over the $1,000,000 limit established by West Virginia Code § 31B-13-1305. Thus, the face of the policy exceeds the requirements of the statute. Setting aside the "known claims" endorsement, the fact the basic policy does not cover claims that were known to the insured before the effective date of the policy does not violate the statute. There is simply nothing in the statute that requires insurers to issue policies covering claims which "arise from circumstances which, prior to the effective date of the *Policy Period*, any *Insured* might reasonably expect would be the basis for a *Claim*[.]"

*Accountants Prof'l Liab. Ins. Policy*, at 1 (I.A.1(b)) (italics original). Likewise, such a limitation does not violate public policy in general. As recognized by the Fourth Circuit in *Bryan Brothers*, "[i]nsurers do not usually contract to cover preexisting risks and liabilities known by an insured." 660 F.3d at 831.[7]

Additionally, the Court notes that the statutory language of § 31B-13-1305 regulates PLLCs and places the burden on PLLCs to obtain the appropriate level of insurance. The statute does not regulate insurers. If Defendant wanted to fully cover the claims precluded by the basic policy, it could have purchased an Employment Practices Liability Policy, but it did not. Instead, Defendant purchased a separate endorsement expressly entitled "LIMITED COVERAGE FOR 'KNOWN CLAIMS' ENDORSEMENT" as part of its Accountants Professional Liability Insurance Policy. By providing for *additional coverage* beyond the basic policy for "known claims," this endorsement certainly violates no public policy. Thus, given that neither the basic policy nor the endorsement violate any public policy, the Court finds the terms of the contract should be enforced.

## IV.
## CONCLUSION

Accordingly, having resolved the issues before the Court and for the foregoing reasons, the Court **GRANTS** summary judgment in favor of Defendant to the extent Defendant argues it is entitled to the sub-limit of $100,000 under the "known claims" endorsement, but **DENIES** the remainder of its Motion for Summary Judgment. ECF No. 21. Conversely, the Court

---

[7]The fact the policy at issue here contained a condition precedent for "known claims" makes this case completely distinguishable from mandatory minimum requirements for automobile policies for events that occur while the policy is in effect.

**GRANTS** Plaintiff's Motion for Summary Judgment except to the extent Defendant is entitled to coverage under the endorsement. ECF No. 19.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 8, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE